# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HEATHER V.,[1]<br>        Plaintiff,<br><br>  vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>        Defendant. | No. 2:18-cv-00163-MKD<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 18, 23 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 18, 23. The parties consented to proceed before a magistrate judge. ECF No. 9. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's Motion, ECF No. 18, and denies Defendant's Motion, ECF No. 23.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them only by their first names and the initial of their last names.

ORDER - 1

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner

considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

If the claimant is found disabled at any point in this process, the ALJ must also determine if the disability continues through the date of the decision. The Commissioner has established a multi-step sequential evaluation process for determining whether a person's disability continues or ends. 20 C.F.R. §§ 404.1594, 416.994 (2012).[2] This multi-step continuing disability review

_____

[2] Many of the regulations cited in this decision were revised effective March 27, 2017. *See, e.g.*, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5871 (January 18, 2017) (revising 20 C.F.R. § 404.1594). Since the revisions were not effective at the time of the ALJ's decision, they do not apply to

ORDER - 6

process is similar to the five-step sequential evaluation process used to evaluate initial claims, with additional attention as to whether there has been medical improvement. *Compare* 20 C.F.R. §§ 404.1520, 416.920 *with* §§ 404.1594(f), 416.994(b)(5) (2012). A claimant is disabled only if her impairment is "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Determination of whether a person's eligibility for disability benefits continues or ends involves an eight-step process under Title II. 20 C.F.R. §§ 404.1594(f), 416.994(b)(5) (2012). The first step addresses whether the claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1594(f)(1), 416.994(b)(5) (2012). If not, step two determines whether the claimant has an impairment or combination of impairments that meets or equals the severity of an impairment listed in 20 C.F.R. pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1594(f)(2), 416.994(b)(5)(i) (2012). If the impairment does not meet or equal a listed impairment, the third step addresses whether there has been medical

_____

this case. For revised regulations, the version effective at the time of the ALJ's decision is noted.

ORDER - 7

improvement in the claimant's condition.  20 C.F.R. §§ 404.1594(f)(3),

416.994(b)(5)(ii) (2012).  Medical improvement is "any decrease in the medical

severity" of the impairment that was present at the time the individual was disabled

or continued to be disabled.  20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i) (2012).

If there has been medical improvement, at step four, it is determined whether

such improvement is related to the claimant's ability to do work – that is, whether

there has been an increase in the individual's residual functional capacity.  20

C.F.R. §§ 404.1594(f)(4), 416.994(b)(5)(iii) (2012).  If the answer to step four is

yes, the Commissioner skips to step six and inquires whether all of the claimant's

current impairments in combination are severe.  *Id.*  If there has been no medical

improvement or medical improvement is not related to the claimant's ability to

work, the evaluation proceeds to step five.  *Id.*

At step five, if there has been no medical improvement or the medical

improvement is not related to the ability to do work, it is determined whether any

of the special exceptions apply.  20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5)(iv)

(2012).  At step six, if medical improvement is shown to be related to the

claimant's ability to work, it is determined whether the claimant's current

impairments in combination are severe – that is, whether they impose more than a

minimal limitation on the claimant's physical or mental ability to perform basic

work activities.  20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v) (2012); *see also* 20

C.F.R. § 404.1521 (1985); 20 C.F.R. § 416.921 (1991). If the step six finding is that the claimant's current impairments are not severe, the claimant is no longer considered to be disabled. 20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v) (2012).

If the step six finding is that the claimant's current impairments are severe, at step seven, a residual functional capacity finding is made and it is determined whether the claimant can perform past relevant work. 20 C.F.R. §§ 404.1594(f)(7), 416.994(b)(5)(vi); *see also* SSR 82-61, 1982 WL 31387.

Finally, at step eight, if the claimant cannot perform past relevant work, the Commissioner must prove there is alternative work in the national economy that the claimant can perform given her age, education, work experience, and residual functional capacity. 20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii) (2012). If the claimant cannot perform a significant number of other jobs, she remains disabled despite medical improvement; if, however, she can perform a significant number of other jobs, disability ceases. *Id.*

## ALJ'S FINDINGS

On September 24, 2014, Plaintiff filed an application for Title II disability insurance benefits and Title XVI supplemental security income benefits, alleging an onset date of June 15, 2013. Tr. 284-93. The applications were denied initially, Tr. 223-29, and on reconsideration, Tr. 232-36. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on October 26, 2016. Tr. 133-73. On

January 9, 2017, the ALJ granted Plaintiff's claim for benefits from June 15, 2013 through May 25, 2016, and denied Plaintiff's claim for benefits from May 26, 2016 through January 9, 2017, the date of the ALJ's decision. Tr. 105-32.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 15, 2013. Tr. 113. At step two, the ALJ found Plaintiff had the following severe impairments: fibromyalgia and cervical degenerative disc disease of the cervical spine. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 115. The ALJ then concluded that, from June 15, 2013 through May 25, 2016, Plaintiff had the RFC to perform light work with the additional limitation that she would be absent from work at least two to three days per month. Tr. 116. At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 118. At step five, the ALJ found there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 119. The ALJ concluded Plaintiff was under a disability, as defined in the Social Security Act, from June 15, 2013 through May 25, 2016. Tr. 120.

Because the ALJ found Plaintiff was disabled, the ALJ then considered whether the disability continued through the date of the decision. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since, June 15,

2013, the alleged onset date. Tr. 113. At step two, the ALJ found that Plaintiff did not have an impairment that met or medically equaled the severity of a listed impairment. Tr. 120. At step three, the ALJ found medical improvement occurred on May 26, 2016. Tr. 121. At step four, the ALJ found Plaintiff's medical improvement was related to her ability to work. *Id.* The ALJ then skipped to step six and found that Plaintiff's severe impairments remained the same. Tr. 120. At step seven the ALJ concluded that Plaintiff had the residual functional capacity to perform light work with the following limitations:

> [S]he can only stand and walk in combination for four hours out of an eight-hour workday; she cannot climb ladders, ropes, or scaffolds, and can perform all other postural tasks only occasionally; she can have only occasional exposure to extreme heat, humidity, and vibrations; she cannot have exposure to extreme cold, pulmonary irritants, hazardous moving mechanical parts, or unprotected heights; she can tolerate no more than moderate notes; and she is limited to unskilled and semi-skilled work.

Tr. 121.

The ALJ also concluded at step seven that Plaintiff was not capable of performing past relevant work. Tr. 124. Finally, at step eight, the ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as electronics worker, mail clerk, or charge account clerk. Tr. 124-25. The ALJ also found that Plaintiff's substance use is not

a contributing factor material to the determination of disability.  Tr. 125.  The ALJ concluded that Plaintiff's disability ended on May 26, 2016.  Tr. 126.

On April 2, 2018, the Appeals Council denied review, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 404.981, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability income benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act after March 26, 2016.  ECF No. 18.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence; and

2.  Whether the ALJ properly evaluated Plaintiff's symptom testimony. ECF No. 18 at 1.

## DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinions of treating rheumatologist Nina Flavin, M.D.  ECF No. 18 at 10-12.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995)).

Dr. Flavin began treating Plaintiff on November 13, 2014. Tr. 583. On October 4, 2016, Dr. Flavin completed a report stating that she diagnosed and treated Plaintiff for fibromyalgia; that Plaintiff would be likely to miss more than two to three days of work per month; that Plaintiff would either need to leave work early or not show up to work on those days due to increased symptoms on those days; that Plaintiff probably would need more than the normal breaks afforded in work; that Plaintiff's overall capacity was in the sedentary range with lifting and carrying only five to ten pounds and for no more than 10-15% of the day; that Plaintiff would be limited in bending, squatting, stooping, crouching, crawling, and reaching in a work-like activity less than 25% of the day; that Plaintiff was not likely to be able to be competitive in any work such as sorting, assembly, or inspection type work; that Plaintiff was limited in her driving; that Plaintiff was not likely to be able to maintain work at a 40 hour per week schedule; that Plaintiff was likely to have problems with focus and concentration, such that carrying out even routine simple tasks would require prompts and reminders from supervisors or close supervision throughout the day; that Plaintiff would not likely be able to focus and concentrate to the extent that she could prepare work summaries, daily logs, prepare detailed reports of interviews, work contacts, make schedules for others, or complete assignments of such in a time sensitive manner; and that Plaintiff was not employable, even considering her considerable education and

background.  Tr. 1164-66.  On November 30, 2016, Dr. Flavin submitted a

supplemental statement that references to "improvement" in her own chart notes,

particularly those for summer 2016, refer primarily to Plaintiff's improved

emotional acceptance of her disability; that Plaintiff was no longer suicidal or

severely depressed; and that Plaintiff continued to have all other physical

limitations described in her prior statement, including severe challenges with focus

and concentration.  Tr. 1167.  The ALJ gave these opinions little weight.  Tr. 123.

Because Dr. Flavin's opinion was contradicted by Dr. Alexander, Tr. 142-44, Dr.

MacLennan, Tr. 613, and Dr. St. Louis, Tr. 205-07, the ALJ was required to

provide specific and legitimate reasons to discredit Dr. Flavin's opinion.  *Bayliss*,

427 F.3d at 1216.

### 1.  Purpose of Report

The ALJ found Dr. Flavin's reports were less reliable because they appeared

to be drafted by Plaintiff's attorney.  Tr. 122.  The purpose for which medical

reports are obtained does not provide a legitimate basis for rejecting them.  *Lester*,

81 F.3d at 832.  However, the Secretary "may introduce evidence of actual

improprieties."  *Id.* (citing *Ratto v. Sec'y, Dept. of Health and Human Servs.*, 839

F. Supp. 1415, 1426 (D. Or. 1993)).  Here, the ALJ observed that Dr. Flavin's

reports appeared to be prepared for her signature by Plaintiff's counsel and

questioned whether the reports fell within the legal definition of "medical

ORDER - 15

opinions." Tr. 122. The ALJ implied but did not offer any evidence of actual impropriety. *Id.*; *Lester*, 81 F.3d at 832. That Plaintiff's counsel may have drafted the report documents that Dr. Flavin signed does not, on this record, provide a specific and legitimate reason to discredit her reports.

### 2. Inconsistent with Treatment Notes

The ALJ found Dr. Flavin's reports were less reliable because they were inconsistent with her own treatment notes. Tr. 123. Incongruity between a doctor's medical opinion and treatment records or notes is a specific and legitimate reason to discount a doctor's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, the ALJ identified two treatment notes that the ALJ found were inconsistent with Dr. Flavin's opined limitations. Tr. 123. On June 22, 2015, during the period when the ALJ found Plaintiff was disabled, Dr. Flavin observed Plaintiff looked "very well" and her symptoms were stable. Tr. 1170. On May 25, 2016, Dr. Flavin observed Plaintiff showed "tremendous improvement overall compared to when she initially established care." Tr. 945. The ALJ concluded these treatment notes were inconsistent with Dr. Flavin's opinion that Plaintiff experienced disabling limitations. Tr. 123.

Dr. Flavin's second report was offered to clarify that references to "improvement" in her treatment notes "refer[] primarily to improved emotional acceptance of [Plaintiff's] disability. She is no longer suicidal and no longer

severely depressed. She continues to have all other physical limitations described in [Dr. Flavin's first report], including the severe challenges with focus and concentration." Tr. 1167. The ALJ rejected this clarification because Dr. Flavin's treatment notes did not contain this distinction. Tr. 123. However, the lack of distinction in the treatment notes is precisely why Dr. Flavin submitted the clarification. Tr. 1167. Additionally, Dr. Flavin's clarification is consistent with observations in her treatment notes that the ALJ failed to discuss. In the May 25, 2016 treatment note, which the ALJ identified as evidence of medical improvement, Dr. Flavin observed "[Plaintiff] has really learned to self-manage and cope with her pain," and "[p]ain and fatigue still remain constant, especially on the left side of her body, and she reports on numerous symptoms on her [report of symptoms] that are again overall unchanged and stable." Tr. 945. Overall, the ALJ's conclusion that Dr. Flavin's reports were not consistent with her own treatment notes is not supported by substantial evidence.

### 3. Inconsistent with Other Medical Opinions

The ALJ found Dr. Flavin's reports were less reliable because they were inconsistent with other medical opinions in the record. Tr. 123. The Ninth Circuit has explained that "the treating physician's opinion as to the combined impact of the claimant's limitations – both physical and mental – is entitled to special weight." *Lester*, 81 F.3d at 833. "The treating physician's continuing relationship

with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment." *Id.* The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Other cases have upheld the rejection of an examining or treating physician based in part on the testimony of a non-examining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion)); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

First, the ALJ found Dr. Flavin's opinion was inconsistent with that of reviewing expert Dr. Alexander, who testified that the objective evidence did not support Plaintiff's alleged limitations and that Plaintiff had no functional limitations. Tr. 123, 142-44. However, in a separate discussion, the ALJ gave Dr. Alexander's opinion less weight because Dr. Alexander declined to consider Plaintiff's subjective reporting and based his opinion only on the objective evidence, contrary to SSR 12-2p; *see* SSR 12-2p, 2012 WL 3104869. Tr. 122. Normal objective examination results can be "perfectly consistent with debilitating fibromyalgia." *Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017). Because the ALJ made a separate finding that Dr. Alexander's evaluation of the record was inconsistent with Social Security Administration policy, the ALJ's reliance on Dr. Alexander's evaluation to discredit Dr. Flavin's opinion is not supported by substantial evidence. Moreover, in rejecting Dr. Flavin's treating opinion in favor of Dr. Alexander's reviewing opinion, the ALJ failed to identify substantial evidence in the record to support Dr. Alexander's opinion over Dr. Flavin's opinion. *Andrews*, 53 F.3d at 1039. The ALJ identified two of Dr. Flavin's treatment notes to support the ALJ's interpretation of the evidence. Tr. 123. However, as discussed *supra*, the ALJ's characterization of Dr. Flavin's treatment notes is not supported by substantial evidence. Overall, the ALJ failed to identify

substantial evidence to justify crediting Dr. Alexander's reviewing opinion Dr. Flavin's treating opinion.

Second, the ALJ found Dr. Flavin's opinion was inconsistent with examining psychologist Dr. MacLennan's opinion, which the ALJ characterized as finding no limiting impairments. Tr. 123. The ALJ did not explain how Dr. Flavin's opinion was inconsistent with Dr. MacLennan's opinion, although context[3] indicates the ALJ found Dr. Flavin's opinion regarding focus and concentration to be inconsistent with Dr. MacLennan's opinion. Tr. 123; *see* Tr. 1164-67. Dr. MacLennan opined Plaintiff had no psychological symptoms that would alone prevent her from working, "unless what [Plaintiff] experiences as being physical and neurological are considered psychological and emotional." Tr. 613. In support of the ALJ's interpretation of the evidence, the ALJ identified one treatment note where Plaintiff's primary care provider documented normal attention span and concentration. Tr. 956. Even if the ALJ's finding regarding Plaintiff's mental impairments was supported, this evidence would not justify rejecting Dr. Flavin's opinions on physical limitations in favor of Dr. MacLennan's

_____

[3] The reviewing court is not "deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755.

ORDER - 20

opinion regarding psychological limitations. Dr. MacLennan's opinion does not provide a specific and legitimate reason to discredit Dr. Flavin's opinions.

### 4. Daily Activities

The ALJ found Dr. Flavin's reports were less reliable because they were inconsistent with Plaintiff's daily activities. Tr. 123. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 541, 601-02 (9th Cir. 1999). However, a claimant's ability to engage in mild therapeutic physical activity is not necessarily inconsistent with disabling limitations. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (certain activities such as limited walking for exercise do not detract from a claimant's credibility as to overall disability); *Jordan v. Astrue*, 262 F. App'x 843, 845 (9th Cir. 2008) (unpublished) (claimant's ability to do some therapeutic exercises was not inconsistent with allegation that he needed to lie down regularly to alleviate pain).

Here, the ALJ found Plaintiff's ability to stretch and do yoga throughout the day was inconsistent with the limitations Dr. Flavin opined. Tr. 123. However, the ALJ failed to discuss evidence in the record that Plaintiff's stretching and yoga was necessary to prevent further pain and was recommended by medical providers. *See* Tr. 478 (July 29, 2014: Plaintiff "is to frequently stretch her shoulder otherwise its spasms or locks up"); Tr. 608 (December 12, 2014: Plaintiff "has to stretch

multiple times every day to help with the pain"); Tr. 736 (March 26, 2015: Plaintiff's primary care provider recommended physical therapy and home exercises); Tr. 868 (February 27, 2015: Dr. Flavin recommended regular exercise to supplement her medications). It was not a reasonable interpretation of the evidence for the ALJ to conclude that Plaintiff's ability to do mild therapeutic activity, upon medical advice, was inconsistent with Dr. Flavin's opined limitations. Tr. 123.

Furthermore, the record reflects Plaintiff engaged in stretching and yoga during the period in which the ALJ found Plaintiff was disabled. Tr. 478, 608, 736, 868; *see also* Tr. 480 (July 29, 2014: Plaintiff reported daily yoga and stretching); Tr. 358 (November 11, 2014: Plaintiff reported daily basic yoga limited to floor work); Tr. 832 (April 10, 2015: Plaintiff reported daily yoga and stretching). Prior to May 26, 2016, the ALJ characterized Plaintiff's daily activities as not "high-functioning." Tr. 118. The ALJ failed to explain how Plaintiff's ability to do yoga and stretching was consistent with a finding of disability through May 25, 2016, yet inconsistent with Dr. Flavin's opined limitations after May 26, 2016. Additionally, the ALJ found that Plaintiff's reported ability to prepare food from scratch was inconsistent with the limitations Dr. Flavin opined. Tr. 123. However, Plaintiff similarly reported cooking meals from scratch during the period in which the ALJ found Plaintiff was disabled. *See*

Tr. 356 (November 11, 2014: Plaintiff reported cooking daily and preparing large crock pot meals that she freezes); Tr. 608 (December 12, 2014: "When she cooks she prepares large amounts and freezes things"); *see also* Tr. 332 (November 2014: Plaintiff reported processed foods and certain food ingredients can be a headache and nausea trigger). The ALJ failed to explain how Plaintiff's ability to prepare meals was consistent with a finding of disability through May 25, 2016, yet inconsistent with Dr. Flavin's opined limitations after May 26, 2016. The ALJ's conclusion that Dr. Flavin's opined limitations were inconsistent with Plaintiff's daily activities is not supported by substantial evidence.

### 5. Opinion on Ultimate Issue of Disability

The ALJ found Dr. Flavin's reports were not entitled to weight because they gave an opinion on the ultimate issue of disability. Tr. 123. A statement by a medical source that a claimant is "unable to work" is not a medical opinion and is not due "any special significance." 20 C.F.R. §§ 404.1527(d), 416.927(d). Nevertheless, the ALJ is required to consider medical source opinions about any issue, including issues reserved to the Commissioner, by evaluating the opinion in light of the evidence in the record and applying the applicable 20 C.F.R. §§ 404.1527(d), 416.927(d) factors. SSR 96-5p, 1996 WL 374183, at *2-*3. Here, Dr. Flavin's opinion that Plaintiff "is not employable, even considering her considerable education and background" is an opinion on the ultimate issue of

ORDER - 23

disability, and therefore not due any special significance. Tr. 1166; 20 C.F.R. §§
404.1527(d), 416.927(d). However, the ALJ is still required to consider Dr.
Flavin's opinion in light of the relevant criteria. SSR 96-5p, 1996 WL 374183, at
*2-*3. For the reasons discussed *supra*, the ALJ failed to provide specific and
legitimate reason, supported by substantial evidence, to discredit Dr. Flavin's
opinions. This was error.

**B. Plaintiff's Symptom Complaints**

Plaintiff contends the ALJ failed to rely on clear and convincing reasons to
discredit her symptom testimony. ECF No. 18 at 3-10.

An ALJ engages in a two-step analysis to determine whether to discount a
claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL
1119029, at *2. "First, the ALJ must determine whether there is objective medical
evidence of an underlying impairment which could reasonably be expected to
produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation
marks omitted). "The claimant is not required to show that [the claimant's]
impairment could reasonably be expected to cause the severity of the symptom [the
claimant] has alleged; [the claimant] need only show that it could reasonably have
caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th
Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c) (2011). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence. Tr. 121.

### 1. Daily Activities

The ALJ found Plaintiff's symptom testimony was inconsistent with her daily activities after May 26, 2016. Tr. 123-24. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that

are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. Additionally, a claimant's ability to engage in mild therapeutic physical activity does not necessarily undermine the claimant's pain allegations. *See Vertigan*, 260 F.3d at 1050 (certain activities such as limited walking for exercise do not detract from a claimant's credibility as to overall disability); *Jordan*, 262 F. App'x at 845 (claimant's ability to do some therapeutic exercises was not inconsistent with allegation that he needed to lie down regularly to alleviate pain).

Here, the ALJ found Plaintiff's ability to stretch and do yoga throughout the day was inconsistent with Plaintiff's allegations that she was "limited in 'all things physical' for 20 to 30 minutes." Tr. 123-24; *see* Tr. 359. Although Plaintiff reported engaging in yoga and stretching frequently, the record does not document how much time Plaintiff spent engaged in these activities in a given day. Tr. 478, 608, 736, 868. Additionally, Plaintiff's medical providers recommended she exercise and stretch. Tr. 736, 868. Plaintiff's ability to engage in this mild therapeutic activity does not undermine her symptom reporting. *See Vertigan*, 260 F.3d at 1050. Furthermore, as discussed *supra*, the record reflects Plaintiff engaged in yoga and stretching during the period in which the ALJ found she was disabled. Tr. 358, 478, 480, 608, 736, 832, 868. Prior to May 26, 2016, the ALJ characterized Plaintiff's daily activities as not "high-functioning." Tr. 118. The

ORDER - 27

ALJ failed to explain how Plaintiff's ability to do yoga and stretching was consistent with a finding of disability through May 25, 2016, yet inconsistent with her alleged limitations after May 26, 2016. Plaintiff's ability to engage in stretching and yoga does not provide a clear and convincing reason supported by substantial evidence to discredit Plaintiff's symptom testimony.

### 2. Inconsistent Medical Evidence

The ALJ found Plaintiff's allegations of "brain fog" were inconsistent with the medical evidence. Tr. 123-24. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601; *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the medical evidence is a relevant factor in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (2011). Here, the ALJ found Plaintiff's allegations of "brain fog" were inconsistent with evidence of normal memory testing. Tr. 124; *see* Tr. 612 (December 12, 2014: memory scores ranged from low average to average); Tr. 956 (August 23, 2016: normal attention span and cooperation). Of the two treatment notes the ALJ cited, one is from the period in which the ALJ found Plaintiff was disabled. Tr. 612. The ALJ failed to explain how this treatment note was

consistent with a finding of disability prior through May 25, 2016, but rendered

Plaintiff's symptom testimony less credible after May 26, 2016.  Tr. 124.  Even if

the ALJ's evaluation of the medical evidence is supported by substantial evidence,

a lack of medical evidence to support Plaintiff's symptom allegations cannot stand

alone as a clear and convincing reason to discredit Plaintiff's symptom testimony.

*Rollins*, 261 F.3d at 857.  Overall, the ALJ failed to provide clear and convincing

reason, supported by substantial evidence, to discredit Plaintiff's symptom

allegations.

**C. Remedy**

Plaintiff urges the Court to remand this case for an immediate award of

benefits.  ECF No. 18 at 13.

"The decision whether to remand a case for additional evidence, or simply to

award benefits is within the discretion of the court."  *Sprague v. Bowen*, 812 F.2d

1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

When the Court reverses an ALJ's decision for error, the Court "ordinarily must

remand to the agency for further proceedings."  *Leon v. Berryhill*, 880 F.3d 1041,

1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the

proper course, except in rare circumstances, is to remand to the agency for

additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*,

775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security

cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits. *Revels*, 874 F.3d at 668. Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021. Here, the Court finds that each of the credit-as-true factors is satisfied and that remand for the calculation and award of benefits is warranted.

As to the first element, administrative proceedings are generally useful where the record "has [not] been fully developed," *Garrison*, 759 F.3d at 1020, there is a need to resolve conflicts and ambiguities, *Andrews*, 53 F.3d at 1039, or the "presentation of further evidence ... may well prove enlightening" in light of the passage of time, *I.N.S. v Ventura*, 537 U.S. 12, 18 (2002). *Cf. Nguyen v. Chater*, 100 F.3d 1462, 1466-67 (9th Cir. 1996) (remanding for ALJ to apply

correct legal standard, to hear any additional evidence, and resolve any remaining conflicts); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (same); *Dodrill v. Shalala*, 12 F.3d 915, 918-919 (9th Cir. 1993) (same); *Bunnell*, 947 F.2d at 348 (en banc) (same).  Here, the record has been fully developed and contains several years' worth of treatment records, including notes from a treating specialist, and opinion evidence from the treating specialist, Plaintiff, and several of her family members.  The treating specialist's opinions were rendered after the date on which the ALJ found medical improvement. Tr. 1164-66.  Further proceedings are not necessary.

Second, as discussed *supra*, the ALJ failed to provide legally sufficient reasons, supported by substantial evidence, for rejecting Dr. Flavin's opinions and Plaintiff's symptom testimony after May 26, 2016.  Therefore, the second prong of the credit-as-true rule is met.

The third prong of the credit-as-true rule is satisfied because if Dr. Flavin's opinions were credited as true, the ALJ would be required to find Plaintiff disabled.  Specifically, Dr. Flavin opined Plaintiff's impairments would cause her to miss more than two to three days of work per month. Tr. 1165.  The vocational expert testified that an individual with that degree of absenteeism would not be able to maintain work in any capacity. Tr. 170.  Therefore, if the ALJ had fully credited Dr. Flavin's opinion, the ALJ would be required to find Plaintiff disabled.

Finally, the record as a whole does not leave serious doubt as to whether Plaintiff is disabled. *Garrison*, 759 F.3d at 1021. The ALJ concluded Plaintiff was disabled during the period between her alleged onset date through May 25, 2016, Tr. 120, but then concluded medical improvement occurred on May 26, 2016. Tr. 121. However, for reasons discussed throughout this opinion, the ALJ's finding of medical improvement is not supported by substantial evidence and was based on an erroneous rejection of Plaintiff's treating specialist's opinion and supplemental clarification statement. In formulating an RFC for the period after May 26, 2016, the ALJ relied on one computed tomography scan, which the ALJ interpreted without the assistance of a medical opinion. Tr. 122; *see* Tr. 951. The ALJ also gave significant weight to May 14, 2015 opinion of agency reviewer Dr. St. Louis for the period following May 26, 2016, but gave this same opinion little weight before that date. Tr. 118. The ALJ's second RFC formulation was therefore based on the opinion of a reviewing physician whose opinion predated the period for which the ALJ gave her opinion significant weight, and therefore did not review evidence from the relevant period. Tr. 205-07. To the contrary, Dr. Flavin's opinions that Plaintiff had disabling limitations were rendered after the date on which the ALJ found medical improvement occurred. Tr. 1164-67. Plaintiff's symptom reporting, the medical evidence, and Plaintiff's daily activities are consistent throughout the record before and after May 26, 2016. Therefore, the

record as a whole does not leave serious doubt as to whether Plaintiff was disabled after May 26, 2016.

Because all three prongs of the credit-as-true test are met, and the record as a whole does not leave serious doubt as to whether Plaintiff is disabled, this case is remanded for an immediate award of benefits.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 18, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 23, is **DENIED**.

3. The Court enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED April 16, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 33